UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 FEB 22 PM 2: 54

BY_____

DEPUTY CLERK

RUTH ANNE NEBORSKY,

    Plaintiff,

  v.

TOWN OF VICTORY, FERNE LOOMIS in
her official & personal capacity, CAROL
EASTER in her official & personal capacity,
DAWN PETERS in her official & personal
capacity, BONNIE BATCHELDER in her
official & personal capacity, and
BATCHELDER ASSOCIATES in its official
& personal capacity,

    Defendants.

Case No. 5:17-cv-142

## DECISION ON MOTION TO DISMISS
### (Doc. 7)

    Plaintiff Ruth Anne Neborsky ("Neborsky") alleges that the Defendants, comprising the
Town of Victory, various town officers, and an accountant engaged by the Town, violated her
rights under the United States and Vermont constitutions and the Voting Rights Act, and
defamed her. Neborsky alleges that the Defendants spied on her, removed her name from the
town's voter registration rolls, and disseminated wrongful claims that she had committed
improprieties in her role as town clerk and town treasurer of Victory, resulting in damage to her
reputation and career.

    This matter came before the court on November 29, 2017 for hearing on a Motion to
Dismiss (Doc. 7) brought by Defendants Bonnie Batchelder and Batchelder Associates ("the
Batchelder Defendants" or "Batchelder"). Attorney Deborah Bucknam appeared on behalf of
Neborsky, Attorney Marikate Kelley appeared on behalf of the Town of Victory, Attorney
Constance Pell appeared on behalf of Defendants Ferne Loomis and Carol Easter, Attorney Gary

Franklin appeared on behalf of the Batchelder Defendants. For the reasons set forth herein, the court denies in all respects the motion to dismiss.

## FACTS

The following facts are set forth in the Complaint, and the court accepts them as true and draws all reasonable inferences from them in favor of Neborsky for the purposes of this motion to dismiss.

Neborsky is a resident of the Town of Victory. She was elected town clerk and treasurer in 2003. Beginning in 2011, Defendants Ferne Loomis, Carol Easter, and Dawn Peters attempted to undermine Neborsky by claiming variously that she had embezzled funds, that she was not a resident of the town, and that her son's school tuition should not have been paid by the town. In furtherance of these efforts, they surveilled Neborsky's home and property. On November 27, 2013, Neborsky resigned as town clerk and treasurer. Defendants Loomis, Easter, and Peters continued to make false statements concerning Neborksy's residency and malfeasance in 2014, 2015, and 2016.

In March 2014, Defendant Ferne Loomis, who was chair of the town selectboard, engaged Batchelder to perform a forensic audit of the town. (Doc. 1, ¶ 40.) On August 15, 2014, Batchelder issued a letter to the town selectboard falsely claiming that there had been various irregularities in the town's finances during Neborsky's term as town clerk and treasurer. (*Id.* at ¶ 42). Defendant Loomis sent this letter to all town voters, even though the letter stated that it was "intended solely for the information and use of the Select Board and management and is not intended to be used by anyone other than these specified parties." After the release of the letter, Neborsky contacted Batchelder and offered to meet with Batchelder to answer any questions. Batchelder responded by stating that the letter was "preliminary and a draft" and that it was "premature to be discussing" the matter. Batchelder made no further contact with Neborsky.

In March 2015, Defendant Bonnie Batchelder spoke at Victory's town meeting and falsely stated that funds were missing and unaccounted for and that Neborsky had not properly performed her official duties. Batchelder was thereafter engaged by the town to reconcile its accounts on a monthly basis.

In January 2016, Batchelder issued a report falsely stating that there were $300,000 in discrepancies in the financial records maintained by Neborsky while she was town clerk and treasurer. The report contained a multitude of false statements about financial irregularities during Neborsky's term.

Neborsky filed suit in the Vermont Superior Court on January 25, 2016, alleging that the town and Batchelder had violated the Vermont Public Records Act, 1 V.S.A. §§ 316–18, by failing to make available for public review documents that Batchelder had relied upon in preparing its report. In the course of that litigation, Batchelder successfully moved for summary judgment on the issue of whether it was an entity subject to the Public Records Act.

## ANALYSIS

Of the eight counts in Neborsky's complaint, three allege wrongdoing by the Batchelder Defendants. Count 3 claims that the Batchelder Defendants violated Neborsky's liberty interest in her reputation by maliciously making false statements about her while acting under color of state law. Count 7 alleges defamation of Neborksy by the Batchelder Defendants. Count 8 alleges conspiracy to deprive Neborsky of her constitutional liberty rights.

The Batchelder Defendants have moved to dismiss, arguing that Neborsky's claims against them are precluded under the doctrines of res judicata and collateral estoppel. They point to the decision granting summary judgment in their favor in the state court public records litigation, where the Superior Court held that Batchelder was not a "custodian" of Victory's records within the meaning of 1 V.S.A. § 318(a). The Superior Court determined that Batchelder was an independent auditor rather than a public agency, and that its temporary possession of town records for the purposes of performing an audit was not enough for it to be deemed a custodian. *See Neborsky v. Town of Victory*, No. 2-1-16 Excv (Vt. Super. Ct. Aug. 5, 2016). Batchelder contends that this determination should have preclusive effect on the question of whether it acted under color of state law, which is a necessary element of Neborsky's constitutional claims.

"Under the Constitution's Full Faith and Credit Clause, *see* U.S. Const. Art. IV, § 1, federal courts must accord state court judgments the same preclusive effect as other courts within that state." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Migra v. Warren City School District*, 465 U.S. 75, 81 (1984)). Accordingly, Vermont law governs the court's analysis

of the preclusive effect of the Vermont Superior Court's grant of summary judgment in the public records litigation.

Though the Batchelder Defendants invoke both res judicata and collateral estoppel, the substance of their argument sounds in collateral estoppel, or issue preclusion, rather than in res judicata, or claim preclusion. The Batchelder Defendants do not argue that Neborksy raised or should have raised the constitutional claims and defamation claims in Counts 3, 7, or 8 of the Complaint in the public records litigation in state court. Rather, they argue that the state court's ruling on the public agency and custodianship issues of the public records claim should preclude Neborsky from asserting the issue of whether Batchelder acted under color of state law in her constitutional claim. Nevertheless, the court will address both theories.

## I. Res Judicata

Res judicata precludes litigation only when "the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical." *Faulkner v. Caledonia Cty. Fair Ass'n*, 2004 VT 123, ¶ 8. Here, the dispositive question is whether the causes of action in the two matters are the same or substantially identical.

Superficially, there are clear and significant differences between the causes of action, with the state court suit alleging violations of the Vermont Public Records Act and the present suit alleging violations of the United States and Vermont constitutions and Vermont common law. However, Vermont has adopted the transactional approach to determining identity of causes of action, which requires more than a superficial examination of the counts of the complaint. Under the transactional approach, res judicata requires "a plaintiff to address in one lawsuit all injuries emanating from 'all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Id.* at ¶ 12 (quoting Restatement (Second) of Judgments § 24(2)). "[T]he scope of a 'transaction' is determined by 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* at ¶ 13 (quoting Restatement (Second) of Judgments § 24(2)).

Here, there is significant relation in time, space, origin, and motivation between the facts underlying the claims in the two suits, but the gaps are large and crucial. The facts underlying the public records act litigation pertained to the extent of Batchelder's duties during the course of the

audit and the extent of Batchelder's care and control over town records. The facts underlying the claims against Batchelder in the present litigation concern Batchelder's statements to third parties concerning Neborsky, the harms that Neborsky suffered as a result of those statements, and the nature of the relationship between Batchelder and the Town of Victory. While both actions implicate the broad circumstances of the general relationship between Batchelder and the Town of Victory, the present action also turns on the specific circumstances and context in which the false statements were made. The facts underlying the two actions are related to a considerable degree, but many of the most important facts in this case were outside the scope of the public records action. On balance, this factor militates against a finding that the facts underlying the two matters fall within the scope of a single transaction.

The facts also do not form a convenient trial unit. Suits brought under the Vermont Public Records Act are required by statute to be "expedited in every way," taking precedence over other matters on the Superior Court's docket. 1 V.S.A. § 319(b). The purpose of the statute is clear: litigation to enforce the public records obligations is fast-tracked to proceed and conclude as quickly as possible. Applying res judicata in the manner urged by Batchelder here would essentially require a plaintiff in a public records action to raise in that same suit all other causes of action that touch any of the facts underlying the public records claim. Far from being a convenient trial unit, such an amalgamation of diverse claims subject to different timelines would create serious inconveniences for the parties and the court. The options before the court presiding over such a case would be either to decelerate the public records claim to accommodate the other causes of action, or to accelerate the other claims to accommodate the public records claim. The former would frustrate the purpose of the Public Records Act; the latter would deny the parties a full and fair opportunity to develop their evidence and arguments, and would invite abuse by giving litigants a perverse incentive to paste dubious public records claims onto other lawsuits. This factor also weighs against a finding that the facts underlying the two matters fall within the scope of a single transaction.

For the same reasons, it would not conform to the parties' expectations to treat public records claims and claims of constitutional violations and defamation as a unit. A reasonable plaintiff bringing a public records action, which is subject to unique statutory constraints, would not expect to be obliged to assert other causes of action in the same complaint and litigate them simultaneously. A reasonable defendant in a public records action would not expect repose from

other causes of action emanating from related facts. This factor also weighs against a finding that the facts underlying the two matters fall within the scope of a single transaction.

Having considered all of the relevant factors, the court concludes that the facts underlying the two matters do not fall within the scope of a single transaction for res judicata purposes. Consequently, they are not the same or substantially identical for res judicata purposes, and res judicata does not apply.

## II. Collateral Estoppel

"Collateral estoppel applies when five criteria are met: (1) the party was involved in the prior action; (2) the issue in the prior action was resolved by 'a final judgment on the merits'; (3) the issue in the prior action is the same as the issue raised in the later action; (4) the party had 'a full and fair opportunity' to litigate the issue in the prior action; and (5) applying preclusion in the later action is fair." *In re Harwood*, 2013 VT 89, ¶ 10 (quoting *Trepanier v. Getting Organized, Inc.*, 583 A.2d 583, 587 (Vt. 1990)). The parties dispute whether the grant of summary judgment in the public records action was a final judgment on the merits, but the court does not reach that question; the question of whether the issue resolved in the public records action is the same as the issue raised in this case is dispositive.

"Issues are separate for collateral estoppel purposes 'if the second action involves application of a different legal standard, even though the factual setting of both suits be the same.'" *Id.* at ¶ 11 (quoting *Peterson v. Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971) (per curiam)).

The question of whether the Batchelder Defendants acted under color of state law while making false statements about Neborsky involves the application of a different legal standard than the question of whether the Batchelder Defendants were public agencies or custodians of public records within the meaning of the Vermont Public Records Act.

An entity acts under color of state law for purposes of 42 U.S.C. § 1983 when "(1) the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been

delegated a public function by the state, ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)) (citations and internal quotation marks omitted). By contrast, in the context of the Vermont Public Records Act, the term "public agency" is defined at 1 V.S.A. § 317(a)(2) to mean "any agency, board, department, commission, committee, branch, instrumentality, or authority of the State or any agency, board, committee, department, branch, instrumentality, commission, or authority of any political subdivision of the State."

These are different legal standards. An entity that is not a "public agency" within the meaning of the Vermont Public Records Act might nonetheless be acting under color of state law for constitutional purposes. Accordingly, the court concludes that the issues are separate for collateral estoppel purposes, and that collateral estoppel does not apply.

## CONCLUSION

In sum, the court concludes that the state court's grant of summary judgment in favor of the Batchelder Defendants in a Vermont Public Records Act case does not preclude Neborsky's claims for defamation and violation of her federal and state constitutional rights and federal statutory rights.

Batchelder's Motion to Dismiss (Doc. 7) is therefore **DENIED** in all respects.

Dated at Rutland, in the District of Vermont, this 22 day of February, 2018.

Geoffrey W. Crawford, Chief Judge
United States District Court